UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LINDSEY GRENN KRINKS, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:12-cv-01095 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| WILLIAM EDWARD "BILL" HASLAM, ) | |
| GOVERNOR OF THE STATE OF ) | |
| TENNESSEE, ET AL., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM

Defendants William Edward (Bill) Haslam, William (Bill) Gibbons, and Steven Cates have filed a Motion for Partial Dismissal (Docket No. 12), to which the plaintiffs have filed a Response in opposition (Docket No. 14), and Haslam, Gibbons, and Cates filed a Reply (Docket No. 16). Subject to the clarifications set forth herein, the Motion for Partial Dismissal will be granted in part and denied in part as moot.

# BACKGROUND

## I. Factual Background[1]

The plaintiffs in this case participated in the "Occupy Nashville" movement in October 2011, during which time they protested on Nashville's Legislative Plaza (the "Plaza"), formerly known as War Memorial Square. Prior to October 27, 2011, participants seeking to utilize the Plaza for free speech activities were required to comply with a set of rules ("Old Rules") issued

---

[1]Unless otherwise noted, the facts are drawn from the allegations in the plaintiffs' Complaint. (Docket No. 1.)

1

by the Department of General Services ("DGS"). The rules placed no limitation on the hours of use of the Plaza and, at least according to a March 4, 2008 letter from the DGS to the American Civil Liberties Union, had been interpreted by the state of Tennessee as permitting all non-exclusive use of the Plaza without requiring a permit. (*See id.*, Ex. 1.) Thus, between October 6 and October 27, 2011, the Occupy Nashville protestors were able to maintain a 24-hour per day presence on the Plaza.

However, on October 27, 2011, without notice, comment, or approval by the Attorney General or publication by the Secretary of State, the DGS issued a so-styled "Legislative Plaza, War Memorial Courtyard and Capital Grounds Use Policy" (the "New Rules").[2] The New Rules purported to amend or abrogate the Old Rules. The New Rules, which purported to be "effective immediately," required, *inter alia*, any "assemblies and gatherings of persons" on the Plaza to obtain a "use permit" from the DGS. The New Rules provided that the DGS "may issue permits upon proper application and satisfaction of use fees, security and liability insurance requirements" for use of the Plaza between 9 a.m. and 4 p.m only. The New Rules permitted the DGS to issue "special use permits" for access to the Plaza outside of that time frame, but declared that the Plaza was "closed to the public" from 10 p.m. to 6 a.m daily and that overnight occupancy of the Plaza was forbidden.

Broadly, the plaintiffs allege that officers from the Tennessee Highway Patrol ("THP"), purporting to enforce the New Rules, unlawfully arrested the plaintiffs at two different times on

---

[2] In another opinion by this court concerning the Occupy Nashville movement, the court referred to these rules as the "Use Policy," reflecting the nomenclature utilized by the parties in that case. The "Use Policy" and the "New Rules" refer to the same document.

October 28, 2011,[3] and unlawfully detained them after a night court commissioner refused to sign the warrants for the plaintiffs' arrest. Furthermore, the THP officers allegedly confiscated the plaintiffs' property, which has not been returned to them and may have been destroyed.

On April 26, 2012, the DGS formally withdrew the "New Rules." On November 20, 2012, before plaintiffs filed this lawsuit, the DGS put into effect an updated set of rules ("Current Rules").[4]

Based on the October 2011 incidents, the plaintiffs sued Tennessee Governor Haslam in his official capacity only, Tennessee Department of Safety and Homeland Security Commissioner Gibbons in his official and individual capacities, DGS Commissioner Cates in his official and individual capacities, and THP Officer "John Does" in their official and individual capacities.[5] The plaintiffs assert claims (1) for alleged violations of rights secured to them by the First, Fourth, and Fourteenth Amendments of the United States Constitution, actionable under § 1983 (Counts I, II, V, VII, VIII, and IX)[6]; (2) for violations of rights secured to them by Article I,

---

[3] One THP raid took place in the early morning; the other took place later that day.

[4] The facts in this paragraph are drawn from the Affidavit of Thaddeus Watkins (Docket No. 12, Ex. 1), the General Counsel for the DGS. The plaintiffs have not argued that introduction of this affidavit should result in conversion of the motion. Instead, in responding to the Motion for Partial Dismissal, they treated the facts stated in the Watkins Affidavit as true. At any rate, the matters addressed in the Watkins Affidavit are matters of public record, over which the court takes judicial notice.

[5] The Complaint divides the plaintiffs into two categories: (1) plaintiffs who were arrested in either or both of the two raids; and (2) plaintiffs who allegedly suffered constitutional deprivations but fled before being arrested. These distinctions are not relevant for purposes of the instant motion. Therefore, in the interest of simplicity only, the court will not draw distinctions among these plaintiffs in this opinion.

[6] Based on the text of Count VIII, claiming unlawful arrest, the court construes the plaintiffs as asserting that claim against only Gibbons, Cates, and certain John Doe Officers, but not against Haslam.

3

§ 19 (freedom of speech and expression), Article I, § 23 (freedom of assembly), and Article I, § 8 (right to be free of unlawful searches and seizures) of the Tennessee Constitution; and (3) for a violation of the Tennessee Uniform Procedures Act ("TUPA"), Tenn. Code Ann. § 4-5-102(2).

In their Motion for Partial Dismissal, defendants Haslam, Gibbons, and Cates have moved in their official capacities only, arguing that certain claims and/or forms of relief requested should be dismissed.[7] Specifically, they argue that the court should dismiss (1) the plaintiffs' claims for money damages against them in their official capacities, (2) the plaintiffs' claims for alleged violations of the Tennessee Constitution, and (3) the plaintiffs' demands for declaratory and/or injunctive relief.

In their Response, the plaintiffs state that they do not seek money damages from Haslam, Gibbons, and Cates, thereby clarifying an ambiguity in their Complaint. Therefore, as to those specific claims, the court will deny the defendants' motion as moot. The court addresses the remaining claims herein.

## MOTION TO DISMISS STANDARD

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

---

[7]Haslam, Gibbons, and Cates have not challenged the individual claims against them, nor have they challenged the claims asserted against the John Doe Officers.

the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

### I. Injunctive Relief

The plaintiffs demand injunctive relief in the form of "[a] preliminary and then permanent injunction prohibiting [Haslam, Gibbons, and Cates] from enforcing the New Rules." (Prayer for Relief ¶ 3.) However, (1) the New Rules were already subject to an injunction in the earlier-filed companion case *Occupy Nashville, et al. v. William Edward "Bill" Haslam, et al.*, Civil Action No. 3:11-CV-1037 (M.D. Tenn. filed Oct. 31, 2011), in which the court enjoined Haslam, Gibbons, and Cates (and by extension the State of Tennessee) from enforcing the New Rules; and (2) the DGS thereafter abrogated those rules and replaced them with the Current Rules, which rules the plaintiffs do not challenge in their Complaint. The defendants argue that, in light of

5

these developments, the plaintiffs lack standing to pursue injunctive relief and/or that the issue is moot. In response, the plaintiffs argue that they have standing because (1) the Complaint alleges a "pervasive pattern of past violations" of their constitutional rights, which the Supreme Court has found can support standing to seek injunctive relief for violations of the United States Constitution, *see, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 373-75, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976), and/or (2) their allegations satisfy the "voluntary cessation doctrine," which can provide an exception to mootness. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S. Ct. 894, 97 L. Ed. 1303 (1953).

To establish standing to obtain injunctive relief in federal court, a plaintiff must establish that (1) the failure to issue an injunction will likely result in continuing irreparable harm; and (2) there is no other adequate legal remedy. *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002). To show that future harm would be "continuing", a plaintiff generally must establish that the risk of future harm is not speculative, typically by asserting a pervasive pattern of past violations of their constitutional rights sufficient to show a substantial likelihood of similar future violations. *See Reporters Comm. for Freedom of Press v. AT&T Co.*, 593 F.2d 1030, 1068 (D.C. Cir. 1978) (citing, *inter alia*, *Allee v. Medrano*, 416 U.S. 802, 815, 94S. Ct. 2191, 40 L. Ed. 2d 566 (1974)). Here, the Complaint does not allege a pervasive pattern of past violations of First Amendment rights by the defendants; to the contrary, it suggests that, before October 27, 2011, the Plaza was utilized for free speech activities without the imposition of unlawful limitations. Moreover, the New Rules have been repealed and replaced. Therefore, based on the allegations in the Complaint, the plaintiffs lack standing to obtain injunctive relief, and the court will dismiss

6

the demand for injunctive relief without prejudice.[8]  Indeed, the plaintiffs do not even challenge the Current Rules governing the use of the Plaza for speech-related activities.

Because the plaintiffs lack standing to obtain injunctive relief, the court need not reach the parties' arguments regarding mootness, although the circumstances suggest that the issue is indeed moot.

## III. Declaratory Relief

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  Therefore, the Declaratory Judgment Act provides a district court with "unique and substantial discretion in deciding whether to declare the rights of litigants" and is an example of Congress's "creat[ing] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286088, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).

In *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, the Sixth Circuit articulated the key criteria the district court should have in mind when deciding whether to exercise this discretion: "[t]he two principle criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in

---

[8]Although the defendants purported to move in their official capacities only, their standing challenge appears to apply equally to the individual capacity claims and the official capacity claims. Therefore, to the extent that the defendants' Partial Motion to Dismiss could be construed as relating only to the official capacity claims, the court, acting *sua sponte*, will also dismiss the demand for injunctive relief relative to the individual claims.  The court also notes that the plaintiffs did not demand injunctive relief from the John Doe Defendants in the first place.

7

issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." 746 F.2d 323, 326 (6th Cir. 1984). To assist in analyzing whether these criteria are met, the *Grand Trunk* court propounded a five-factor balancing test for the district court to use in weighing whether it should exercise its jurisdiction and entertain a plaintiff's declaratory judgment action. *Id.* Those factors are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.*

The plaintiffs now argue, among other things, that issuing a declaratory judgment that the New Rules were illegal "would provide assurance to the Plaintiffs that the New Rules are indeed illegal," and/or "provide guidance for plaintiffs' and others' future lawful speech activities." (*See* Response at p. 14.) The court is not persuaded these interests could justify a declaratory judgment here. The plaintiffs essentially seek an advisory judgment from the court on a moot issue. The New Rules were repealed before this case was filed, and the Current Rules, which are unchallenged, were implemented shortly after the case was filed. Thus, a declaratory judgment would not resolve the case, nor would it "settle the legal relations" between the plaintiffs and the defendants going forward.[9] Therefore, the court finds that declaratory relief is not appropriate

---

[9]Moreover, to the extent that an underlying constitutional violation is a required element of one or more of the plaintiffs' claims, the court may ultimately need to make findings as to whether the plaintiffs' constitutional rights were violated in the first place.

8

under the facts alleged.

## IV. Alleged Violations of the Tennessee Constitution

The plaintiffs concede that states and state officials cannot be sued in federal court in their official capacities for violations of state law, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 121, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), and they have clarified that they do not seek monetary relief for their official capacity claims against the defendants. Therefore, only individual claims for non-monetary relief against Gibbons and Cates relating to alleged violations of the Tennessee Constitution are at issue here.[10] The court has already found that declaratory and injunctive relief is inappropriate here, and the plaintiffs have not identified any other forms of relief they seek relative to these claims.

Accordingly, the court will dismiss all of the individual capacity and official capacity claims asserted against Haslam, Cates, and Gibbons for alleged violations of the Tennessee Constitution. Therefore, the court need not reach the defendants' argument that Tennessee categorically bars individual claims against state officers for alleged violations of the Tennessee Constitution.[11]

---

[10]The plaintiffs sued Governor Haslam in his official capacity only. Therefore, the court construes the plaintiffs as conceding that all claims against Governor Haslam premised on alleged violations of the Tennessee Constitution must be dismissed, regardless of the court's resolution of the other challenges presented in the Motion for Partial Dismissal.

[11]Unlike a "*Bivens*" claim for money damages for violations of federal law by a federal officer acting in his or her individual capacity, Tennessee has not recognized an equivalent claim for money damages for alleged violations of the Tennessee Constitution by a state officer acting in his or her individual capacity. *See Lee v. Ladd*, 834 S.W.2d 323, 324-25 (Tenn. Ct. App. 1992); *Bowden Bldg. Corp. v. Tenn. Real Estate Com'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999). This court, in at least two prior decisions, has suggested that *Lee* and *Bowman* did not address whether a plaintiff may still pursue *injunctive* relief under the same circumstances. *See Peterson v. Dean*, 3:09-cv-628, 2009 WL 3511542, at \*1 (M.D. Tenn. Oct. 23, 2009); *Anderson v. Clarksville Montgomery Cnty. Sch. Sys.*, No. 3:06-0324, 2006 WL 1639438, at \*2-\*3 (M.D.

## V. Remaining Claims

In light of the foregoing, it is useful to clarify the claims and forms of relief that remain in this case. With respect to Governor Haslam, the plaintiffs' official capacity claims under federal law (Counts I, II, V, VII (as to a Fourth Amendment violation) and IX) will proceed, to the extent they seek relief other than money damages and declaratory and injunctive relief. With respect to Cates and Gibbons, (1) the plaintiffs' official capacity claims under federal law (Counts I, II, V, VII (as to a Fourth Amendment violation), VIII, and IX) will proceed, to the extent they seek relief other than monetary damages and declaratory and injunctive relief; (2) the plaintiffs' individual capacity claims under federal law will proceed, to the extent that the plaintiffs seek relief other than declaratory and injunctive relief. With respect to John Doe Officers, all claims will proceed, except to the extent the plaintiffs seek declaratory and injunctive relief.[12]

## CONCLUSION

For the reasons stated herein and subject to the plaintiffs' stated clarifications, the Motion for Partial Dismissal will be granted. The court finds as follows:

- The plaintiffs' demands for injunctive and declaratory relief will be denied without prejudice relative to all defendants;

---

Tenn. June 13, 2006). Here, because the plaintiffs lack standing to pursue injunctive relief, the court need not address the proper interpretation of *Ladd* and *Bowden* – nor, for that matter, have the parties briefed the issue.

[12] If and when the John Doe Officers become named parties to this lawsuit, some of the plaintiffs' clarifications and/or the court's findings herein would presumably bar particular claims against those officers, such as the official capacity claims for alleged violations of the Tennessee Constitution. It also appears that the alleged TUPA violation (Count VI), which presumably applies (at most) to Haslam, Gibbons, and Cates only, is likely moot, although the fact of a TUPA violation could be relevant as to other claims asserted by the plaintiffs. At any rate, because the defendants have not addressed these claims, the court will not dismiss them at this stage.

10

- The defendants' request to dismiss the plaintiffs' official capacity claims for money damages asserted against Haslam, Gibbons, and Cates (under both federal and state law) will be denied as moot.

- The plaintiffs' remaining official capacity claims against Haslam, Cates, and Gibbons for alleged violations of the Tennessee Constitution will be dismissed without prejudice;

- The plaintiffs' individual capacity claims against Gibbons and Cates for alleged violations of the Tennessee Constitution will be dismissed with prejudice as to money damages and dismissed without prejudice as to declaratory and injunctive relief.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge