# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **LINDSAY GLENN KRINKS, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-01095 |
| ) | Judge Trauger/Frensley |
| **WILLIAM EDWARD (Bill) HASLAM,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 65. Defendants have also filed a "Concise Statement of Undisputed Facts" (Docket No. 66) and a supporting Memorandum of Law (Docket No. 67). A brief summary of the facts, which are undisputed, will be helpful context for this Report and Recommendation.

Unless otherwise noted, the following is taken from the Concise Statement of Undisputed Facts or other submissions of the Parties. This matter arose from the events surrounding the "Occupy Nashville" protests, in which protesters "occupied" War Memorial Plaza ("the Plaza") in downtown Nashville day and night for several weeks in October 2011. Protesters set up tents and brought other camping-related items to the Plaza, where some of them ate, slept, and conducted other activities necessary to daily living. On October 27, 2011, Tennessee Governor Haslam issued curfew and permit requirements related to the use of the Plaza (the "Use Policy"). On October 26, 2011, representatives of the protesters had met with state officials (including Defendant Cates) to report safety issues and request additional security, as well as bathrooms and other hygiene facilities, which they requested the state furnish at its own expense. The state had

also received other reports of safety concerns, theft, and sanitation issues. Defendant Cates told the protesters that they would be granted use permits on a day to day basis with reasonable conditions. Through their attorney, the protesters informed state officials that they would not voluntarily leave the Plaza at night. At around 3:00 a.m. on October 28, 2011, pursuant to the Use Policy, Tennessee State Troopers arrested those people who remained on the Plaza after the troopers warned them that they had to leave and gave them ten minutes to vacate. All persons who remained on the Plaza were arrested. On October 29, 2011, substantially the same sequence of events occurred. On both nights, after the Plaza was cleared of all people (because they had either chosen to leave or had been arrested), State officials removed all items (including tents, sleeping bags, and other items used for overnight occupation) from the Plaza and transported them to another location for safekeeping. Later, all items were returned.

Some of the protesters then filed suit, alleging that the arrests violated their rights under the United States Constitution. One such suit, filed on October 31, 2011, ultimately resulted in an Opinion from the Court of Appeals for the Sixth Circuit styled *Occupy Nashville, et al. v. Haslam*, 769 F.3d 434 (6th Cir. 2014). The protesters alleged, *inter alia*, violation of their rights under the First, Fourth, Fifth, and Fourteenth Amendments, naming as defendants Governor Bill Haslam, William Gibbons (Commissioner of the Tennessee Department of Safety and Homeland Security) Steven Cates (Commissioner of the Tennessee Department of General Services) and the troopers, who, being unknown, were sued as "Tennessee Highway Patrol Officers Does 1-210." *Occupy Nashville*, 769 F.3d at 434, 439-40. The Sixth Circuit found that "the State Officials' conduct was objectively reasonable under the circumstances," and thus that the Officials were "entitled to qualified immunity for their actions." *Id.* at 446. The Sixth Circuit further found that:

2

> Our qualified immunity conclusion also necessarily extends to the
> Protesters' claims that their *Fourth* and *Fourteenth Amendment*
> rights were violated. Again, the most that can be said for the
> Protesters' argument is that it is unclear that the law forbade their
> arrest and that they had any liberty interest that could be infringed
> by an alleged failure to provide adequate procedural protections.

*Id.*

*Occupy Nashville* and the case at bar arise from the same events in October 2011, share the same Defendants, and are identical in their claims with the exception of a claim for First Amendment retaliation, present in the instant matter and not in *Occupy Nashville*. *Compare* Docket No. 1 (Complaint) and *Occupy Nashville*, *supra*.

All but two of the original Plaintiffs in this case have since dismissed their claims. *See* Docket Nos. 28, 43. The two remaining Plaintiffs, Christopher Humphrey and Michael Custer, have not responded to the instant Motion. Indeed, it appears that Mr. Humphrey and Mr. Custer cannot be located. *See* Docket No. 54, ordering that the case be administratively closed due to inability to locate Mr. Humphrey or Mr. Custer. The Court ordered Plaintiffs to come forward either with new representation or to indicate that they intend to proceed pro se, but Plaintiffs have not done so. *See* Docket Nos. 47, 48. It is therefore understood that Plaintiffs have not responded to any of the arguments, discussed below, that Defendants make in their Motion or supporting documents. Defendants previously moved for the case to be re-opened in order that they might file this Motion for Summary Judgment, and the Court granted that Motion and reopened the case. *See* Docket Nos. 62, 63.

## II. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

3

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on June 2, 2016. Docket No. 65. Plaintiffs have failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 65.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. . . .
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiffs have failed to respond to Defendants' Concise Statement of Undisputed Facts or file their own Statement of Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Even if Plaintiffs are considered to be proceeding pro se at this time (pro se pleadings should be held to less stringent standards, *see, e.g., Williams v. Curtin*, 631 F.3d 380 (6th Cir. 2011)), pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Accordingly, there are no

genuine issues as to any material fact, and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiffs have failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Court of Appeals for the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden . . . . The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants' have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106. S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In order to prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the

evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings; rather, his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.*; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. Dismissal of Defendant Haslam

Defendants argue that Governor Haslam should be dismissed as a Defendant. Docket No. 67, p. 3. Defendants point out that Plaintiffs' claims against Governor Haslam (and all other Defendants) for declaratory relief and injunctive relief have been dismissed, and the only remaining claim against Governor Haslam is a claim for "[r]eturn of all seized items." *Id.*, *citing* Docket No. 1, p. 28, and Docket Nos. 26, 27. As noted above, Plaintiffs have not responded to this or any other argument in the Motion.

Plaintiffs' claims for declaratory and injunctive relief have been dismissed. Docket Nos. 26, 27. Regarding the property removed from the Plaza, it is undisputed that:

> The intent was to store the property in a secure location for safe-keeping, not to seize the property for any law enforcement purpose or to keep it for any reason. The intent was always to return the

6

> property. **All of the property that was removed was returned. No one from the Governor's office was involved in the removal or return of the property.** Neither the Department of Safety nor the Department of General Services have any of the property that was removed. Neither Commissioner Cates nor Commissioner Gibbons were personally involved in the removal or return of the property.

Docket No. 66, ¶ 40, citations and response prompt omitted, emphasis added.

As it is now undisputed that all of the property that was removed was returned, the claim for return of seized items should be dismissed as moot. As there are no other extant claims against him, Governor Haslam should be dismissed as a Defendant.

**D. Dismissal of "John Doe" Defendants**

Defendants argue that the "John Doe" trooper Defendants should be dismissed because, having not yet been identified and served with process, the action against them has not been properly commenced, and the statute of limitations has run on any civil rights claims that Plaintiffs have attempted to bring against them. Docket No. 67, p. 3-4.

As described above, the events that led to this action took place in October, 2011. *See* Docket No. 1. The statute of limitations has thus run on claims against the John Doe Defendants. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (amendment to identify John Doe officers did not relate back, where statute of limitations had run); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578 (6th Cir. 1992) (one-year statute of limitations in Tenn. Code. Ann. § 28-3-104(a)(1) applies to § 1983 claims arising in Tennessee); *see also Gibson-Holmes v. Fifth Third Bank*, 661 F. Supp. 2d 905, 912 (M.D. Tenn. 2009). The statute has run as to the John Doe troopers, and thus the claims against them are time-barred and should be dismissed.

**E. Previously Dismissed Counts**

The Complaint contains nine separate Counts.  *See* Docket No. 1.  Of these, the Court has already dismissed Counts III and IV (Violations of the Tennessee Constitution) and VI (Violation of the Tennessee Uniform Administrative Procedures Act).  Docket Nos. 26, 27.

**F. Counts Subject to Stare Decisis**

Defendants maintain that the Complaint in this case is "almost identical to" and "based on the exact same facts as" the Complaint filed in *Occupy Nashville*, *supra*, and thus that the Court should make the same findings here with regard to Count I (Violation of First Amendment Rights to Free Speech and Assembly), Count V (Violation of Fourteenth Amendment Due Process) and Count VIII (Unlawful Arrest).  Docket No. 67, p. 4-5, 7-8, 10.  Defendants argue that because the Court of Appeals for the Sixth Circuit determined in *Occupy Nashville* that Defendants are entitled to qualified immunity from damages claims arising from alleged violations of the First, Fourth, and Fourteenth Amendment violations, *stare decisis* requires the Court to find that Defendants are entitled to the same immunity in the case at bar.  *Id.*

Stare decisis, defined by Black's Law Dictionary (9th ed. 2009) as "the doctrine of precedence, under which a court must follow earlier decisions when the same points arise again in litigation," is well-established in the Sixth Circuit.  *See, e.g.*, *Sandusky Mall Co. v. NLRBI*, 242 F.3d 682 (6th Cir. 2001); *Kermin v. C.I.R.*, 713 F.3d 849 (6th Cir. 2013).  The Sixth Circuit's holding providing qualified immunity for the Defendants against First, Fourth, and Fourteenth Amendment claims under identical facts is clear.  *See Occupy Nashville*, 769 F.3d at 445-46.  This Court should therefore also find that Defendants have qualified immunity and dismiss Counts I, V, and VIII.  Although the plaintiffs in *Occupy Nashville* did not, as Plaintiffs here do, allege First Amendment retaliation, it follows from the Sixth Circuit's holding regarding

8

the *Occupy* Plaintiffs' First Amendment claims (that the constitutional right at issue – the right to "indefinite occupation of a public park" – was not clearly established by Supreme Court precedent) that Count IX should also be dismissed under stare decisis. *See Occupy Nashville*, 769 F.3d at 444.

## G. Remaining Counts

Remaining before the Court are Counts II (Selective Enforcement) and VII (Unlawful Search and Seizure of Personal Property).

### 1. Count II (Selective Enforcement)

Defendants argue that, under the selective prosecution analysis held by the Sixth Circuit as the proper standard to apply to cases of selective enforcement, a claimant "must demonstrate that the challenged law enforcement practice had a discriminatory effect <u>and</u> was motivated by a discriminatory purpose." Docket No. 65, p. 6, emphasis in original, internal citation omitted. Defendants argue that Plaintiffs cannot satisfy these elements. *Id.* at 5-7.

To sustain a selective enforcement claim, Plaintiffs must show that similarly situated individuals were treated differently. *See, e.g., Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036-37 (6th Cir. 1992). Here, the undisputed facts are that all persons on the Plaza on October 28 and 29, 2011 who did not leave after being warned were arrested, and that there were no such persons who were not arrested. Docket No. 66, ¶¶ 34-36. Further, Plaintiffs have not provided evidence that Defendants' actions were motivated by a discriminatory purpose. *See i.d.*, ¶¶ 41-43 (Plaintiffs did not respond, other than by objecting, to discovery requests seeking, *inter alia*, "all facts, including identification of witnesses and documents which support your claim that the Use Policy was implemented for purposes of denying First

9

Amendment rights.") As can be seen, Plaintiffs have not established a claim of selective enforcement, and Count II should be dismissed.

## 2. Count VII (Unlawful Search and Seizure of Personal Property)

Defendants contend that Plaintiffs' request for the return of property is moot, as it is undisputed that all property that was removed from War Memorial Plaza was returned. Docket No. 67, p. 8, *citing* Docket No. 66, ¶ 37-40. Regarding Plaintiffs' claim for damages related to seizure of personal property, Defendants argue that they are entitled to qualified immunity because there was no "seizure" for evidence gathering, as contemplated by the Fourth Amendment; instead, the property was removed for safe-keeping. *Id.* at 8, *citing* Docket No. 66, ¶37-40, 47. Defendants also argue that Defendants Cates and Gibbons were not personally involved in the removal or return of property, and that Plaintiffs have not shown a "'causal connection between the misconduct complained of and the official sued.'" *Id.* at 9, *quoting Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1983). Further, Defendants maintain that any potential claim for negligence related to lost or destroyed property would only be properly brought against the State of Tennessee in the Claims Commission, as Defendants are immune to such claims. *Id.* at 9-10, *citing* Tenn. Code Ann. § 9-8-307(h).

The following facts regarding personal property that was removed from the Plaza are undisputed:

> After the arrests, on both nights, David Carpenter and his crew went all across the Plaza to remove items on the Plaza, put them into large trash bags, mark the trash bags and move the trash bags to a safe location. They tried to keep everything that had been in one spot together.
>
> The property was taken to the parking garage underneath the Legislative Plaza.

> The property was returned. David Carpenter loaded the property into a truck and parked the truck at one of the street entrances to the Legislative Plaza. Occupy Nashville participants unloaded the property from the truck and took it back to the War Memorial Plaza. Some of the property was wet, so Occupy Nashville participants took that property to a place to dry it out. Occupy Nashville put the property on the sidewalk, then loaded it onto another truck to either take it to be dried out or transferred back to the Plaza.
>
> The intent was to store the property in a secure location for safe-keeping, not to seize the property for any law enforcement purpose or to keep it for any reason. The intent was always to return the property. All of the property that was removed was returned. No one from the Governor's office was involved in the removal or return of the property. Neither the Department of Safety nor the Department of General Services have any of the property that was removed. Neither Commissioner Cates nor Commissioner Gibbons were personally involved in the removal or return of the property.

Docket No. 66, ¶37-40 (internal citations and response prompts omitted).

As it is undisputed that all personal property that was removed has been returned, Plaintiffs' claim for return of such property is moot. Regarding Plaintiffs' claim for damages related to removal of property, the Court has previously held that:

> With respect to Cates and Gibbons, (1) the plaintiffs' official capacity claims under federal law (Counts I, II, V, VII (as to a Fourth Amendment violation), VIII, and IX) will proceed, to the extent they seek relief other than monetary damages and declaratory and injunctive relief; (2) the plaintiffs' individual capacity claims under federal law will proceed, to the extent that the plaintiffs seek relief other than declaratory and injunctive relief.

Docket No. 26, p. 10.

Related to Count VII, the relief sought from Defendants Cates and Gibbons is declaratory, injunctive, for monetary (including punitive and compensatory) damages, and for "return of all seized items." *See* Docket No. 1, p. 28-29. As previously discussed, Governor

11

Haslam and the John Doe troopers should be dismissed as Defendants. Thus, the only relief still potentially available is monetary damages for claims brought against Defendants Cates and Gibbons in their individual capacities.

In order to maintain a liability claim under 42 U.S.C. § 1983, Plaintiffs may not rely upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for Defendants to be held liable in their individual capacities, Plaintiffs must demonstrate that the each Defendant personally condoned, encouraged, or participated in the allegedly unconstitutional conduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). At a minimum, Plaintiffs must show that the Defendants "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct. *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982). It is now undisputed that Defendants Cates and Gibbons were not personally involved in the removal or return of Plaintiffs' property. Docket No. 66, ¶ 116-119. Further, Plaintiffs have not provided evidence that Defendant Cates or Defendant Gibbons condoned or encouraged the specific conduct of taking the Plaintiffs' possessions in a way that would give rise to personal liability under 42 U.S.C. § 1983.

Because Plaintiffs cannot establish the necessary connection to establish Defendants' liability, the Court need not address Defendants' other arguments, including Defendants' analysis of the claim's Fourth Amendment implications. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 308 (2009) ("the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable") (internal citation and quotation marks omitted); *Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir. 1984) ("we follow the longstanding practice of the Supreme Court . . . [in declining] to decide questions of a

constitutional nature unless absolutely necessary to a decision of the case,") (quotation marks and citation omitted).

### III. CONCLUSION

For the foregoing reasons, Governor Haslam and the John Doe Defendants should be dismissed from this action. Counts III, IV, and VI have previously been dismissed. Counts I, V, VIII and IX should be dismissed following the Sixth Circuit's holding in *Occupy Nashville*. Counts II and VII should be dismissed because the Plaintiffs have not established these claims. Therefore, Defendants' Motion for Summary Judgment (Docket No. 65) should be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge